RILEY SAFER HOLMES & CANCILA LLP
MEGHAN R. MCMEEL (CSB No. 284841)
*mmcmeel@rshc-law.com*
ALISON MADDEFORD (CSB No. 248523)
*amaddeford@rshc-law.com*
111 New Montgomery Street, Suite 600
San Francisco, CA 94105
Telephone:    (415) 275-8550
Facsimile:    (415) 275-8551

Attorneys for Defendants
ALCATEL-LUCENT USA INC., AT&T CORP. AND
PACIFIC BELL TELEPHONE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM DAVIDSON, an individual;<br>PEARL DAVIDSON, an individual,<br><br>                     Plaintiffs,<br><br>          v.<br><br>ALCATEL-LUCENT USA INC., *et al.*,<br><br>                     Defendants. | Case No.   3:16-cv-05766-VC<br><br>(Alameda County Superior Court, Case<br>No. RG16825351)<br><br>**ALCATEL-LUCENT USA INC., AT&T<br>CORP. AND PACIFIC BELL<br>TELEPHONE COMPANY'S JOINT<br>RESPONSE TO PLAINTIFFS'<br>MOTION FOR REMAND**<br><br>Hearing Date:    December 1, 2016<br>Time:              10:00 A.M.<br>Place:             Courtroom 4<br>Judge:             Hon. Vince Chhabria<br><br>Complaint Filed: July 29, 2016<br>Trial Date:        None Set |

Plaintiffs' facial challenge to Defendants' removal notice is defective.[1] Plaintiffs'

main contention—that a removal notice must be accompanied by supporting evidence—

is simply wrong. *Dart Cherokee Basin Operating Co. v. Owens*, --- U.S. ---, ---, 135 S.Ct. 547,

551, 190 L.E.2d 495, (2014). Plaintiffs' additional claim that the only basis for federal

enclave jurisdiction is purchase of land from a state is also incorrect. *Kleppe v. New*

---

[1] Plaintiffs' remand motion challenges Defendants initial removal notice. Defendants
have timely filed an Amended Notice of Removal. The amended notice asserts the
original grounds for removal that are challenged by Plaintiffs' remand motion. The
amended notice also identifies additional federal defenses that serve as grounds for
removal under "federal officer" jurisdiction.

1   *Mexico,* 426 U.S. 529, 542-543, 96 S.Ct. 2285, 49 L.Ed.2d 34 (1976). Finally, Plaintiffs'

2   contention that the government contractor defense is the only basis for federal officer

3   jurisdiction is inaccurate.

4          Defendants' removal notice adequately pleads grounds for removal under both

5   federal enclave and federal officer jurisdiction. No evidence was required to support the

6   factual allegations in the notice, and no evidence has been submitted to challenge the

7   material facts pleaded in Defendants' notice of removal. Moreover, the copy of the

8   Alaska Statehood Act Plaintiffs attach to their remand motion in an attempt to raise a

9   factual challenge to removal actually supports the fact that Fort Yukon Air Force Station

10  ("Fort Yukon") is a federal enclave. Therefore, Plaintiffs' remand motion should be

11  denied.

12  I.    DEFENDANTS' FACTUAL ALLEGATIONS STATE SUFFICIENT GROUNDS FOR REMOVAL.

13         A motion to remand is the functional equivalent of a motion to dismiss for lack of

14  subject-matter jurisdiction under Rule 12(b)(1). *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th

15  Cir. 2014). Like a Rule 12(b)(1) motion, a plaintiff's motion to remand may raise either a

16  facial attack or a factual attack on the removing party's jurisdictional allegations. *Id.* A

17  facial attack challenges the notice of removal itself, on the basis that the notice is legally

18  insufficient to establish jurisdiction. *Id.*at 1121 A factual attack contests the truth of the

19  facts asserted by bringing forth evidence outside of the pleadings to show that there is

20  no basis for those facts. *Id.*; *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (In

21  contrast to a facial attack on subject matter jurisdiction, a Rule 12(b)(1) factual attack

22  "challenge[s] the existence of subject matter jurisdiction in fact, irrespective of the

23  pleadings, and matters outside the pleadings, such as testimony and affidavits, are

24  considered.").

25         Like a complaint initiating an action under Rule 8(a) of the Federal Rules of Civil

26  Procedure, a notice of removal need only contain a "short and plain statement of the

27  grounds for removal." 28 U.S.C. 1446(a). Such "a statement 'short and plain' need not

28  contain evidentiary submissions." *Dart*, 135 S.Ct. at 551.

1   When determining whether a removal notice states a basis for federal court

2   jurisdiction, courts "apply the same liberal rules [to removal allegations] that are applied

3   to other matters of pleading." *Dart*, 135 S.Ct. at 551 (quoting H.R.Rep. No. 100–889, p. 71

4   (1988)). Thus, when a plaintiff makes a facial challenge to a removal notice, the

5   reviewing court accepts the removing party's allegations as true; draws all reasonable

6   inferences in the moving party's favor; and determines whether the allegations are

7   sufficient as a legal matter to invoke the court's jurisdiction. *Leite*, 749 F.3d at 1121.

8   **A. Plaintiffs' remand motion presents a facial challenge to removal.**

9   Plaintiffs have not challenged the removal notice with extrinsic evidence. Instead,

10  Plaintiffs argue that Defendants' removal notice is legally deficient because it is not

11  supported by evidence. (Remand Mot., Mem. Points & Auth. 1 ("Defendants' Notice of

12  Removal is not well taken. As shown below, Defendants have not produced any

13  evidence to support either basis for federal question jurisdiction."); *Id.* at 3 ("The lack of

14  evidentiary support cited in Defendants' Notice of Removal shows that it was

15  improper.").) This is a facial attack on the legal sufficiency of the removal notice. *Leite*,

16  749 F.3d at 1122; *Lawrence*, 919 F.2d at 1529. As such, it is not well-taken.

17  **B. The removal notice states grounds sufficient for "federal enclave" jurisdiction.**

18  Applying the proper standard to Plaintiffs' facial attack on Defendants' removal

19  notice, it is evident that the facts alleged by Defendants state a basis for this Court's

20  jurisdiction under both "federal enclave jurisdiction" and "federal officer jurisdiction."

21  With regard to federal enclave jurisdiction, in general, there are three ways the

22  federal government obtains jurisdiction over land within a state: purchase; cession; and

23  reservation at the time a state is admitted to the Union. *Kleppe*, 426 U.S. at 542-543;

24  *Collins v. Yosemite Park & Curry Co.*, 304 U.S. 518, 529, 58 S.Ct. 1009, 82 L.Ed. 1502 (1938).

25  When the Government obtains jurisdiction by purchase or cession, the Government

26  must expressly accept jurisdiction over the land and the ceding state must consent. 40

27  U.S.C. § 3112 (b); *Paul v. United States*, 371 U.S. 245, 264, 83 S. Ct. 426, 9 L.Ed.2d 292

28  (1963); *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006). But when the

ALCATEL-LUCENT USA INC., AT&T CORP. AND PACIFIC BELL TELEPHONE COMPANY'S JOINT
RESPONSE TO PLAINTIFFS' MOTION FOR REMAND

Government reserves exclusive jurisdiction over federal land at the time a state is admitted to the Union, there is no requirement that the Government separately accept jurisdiction or that the state consent. Under those circumstances, the Government retains jurisdiction, not because of any agreement with the state, but "because the power of Congress extends to the subject." U.S. Const., art. IV, § 3, cl. 2.; *Kleppe*, 426 U.S. at 539; *Coyle v. Smith*, 221 U.S. 559, 568, 31 S.Ct. 688, 690, 55 L.Ed. 853 (1911).

With respect to federal enclave jurisdiction, Defendants' removal notice sets forth the following facts:

1. The federal government established Fort Yukon Air Force Station prior to Alaska becoming a state in 1959. (Am. Removal Not. ¶ 14.)

2. When it admitted Alaska into the Union in 1959, Congress retained exclusive jurisdiction over all military installations in Alaska, including Fort Yukon. (*Id.*)

3. Because Congress retained jurisdiction over Fort Yukon when Alaska became a state, Fort Yukon is a federal enclave. (*Id.*)

4. Mr. Davidson alleges injury as a result of work he performed for AT&T at Fort Yukon Air Force Station in Alaska. (Am. Removal Not. ¶ 12.)

These facts establish sufficient grounds for this Court's exercise of jurisdiction over this case under the federal enclave doctrine. *Kleppe*, 426 U.S. at 539.

**C. The removal notice states grounds sufficient for "federal officer jurisdiction."**

Removal is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), if:

1. the removing party acted under the direction of a federal officer;

2. there is an alleged causal nexus between the plaintiff's claims and acts the removing party performed under the color of federal office; and

3. the removing party has a colorable defense to the plaintiff's claims.

*Mesa v. California*, 489 U.S. 121, 124-26, 134-35 (1989). A removing party "acts under" a federal officer when it works "hand-in-hand with the government" to "assist, or to help carry out, the duties or tasks" of the Government. *Ruppel v. CBS Corp.*, 701 F.3d 1176,

1   1181(7th Cir. 2012); *Watson v. Philip Morris Cos.*, 551 U.S. 142,152 (2007).

2       The Supreme Court has mandated that the federal officer removal statute may not

3   be given a narrow or limited application and must be liberally construed. *Watson*, 551

4   U.S. a,147 (2007) ("The words 'acting under' are broad, and this Court has made clear

5   that the statute must be 'liberally construed.'" (quoting *Colorado v. Symes*, 286 U.S. 510,

6   517 (1932)); *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) ("[T]his Court has held that

7   the right of removal is absolute for conduct performed under color of federal office, and

8   has insisted that the policy favoring removal 'should not be frustrated by a narrow,

9   grudging interpretation of § 1442(a)(1).'" (quoting *Willingham v. Morgan*, 395 U.S. 402,

10  407 (1969))); *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir.2006) (§

11  1442(a)(1) must be "liberally construed to give full effect to the purposes for which [it]

12  was] enacted."). To justify removal, a defendant need not assert a "clearly sustainable

13  defense," nor does it need to "win [its] case before [it] can have [the case] removed."

14  *Willingham*, 395 U.S. at 407. Rather, where a defendant seeks removal pursuant to the

15  federal officer removal statute, "no determination of fact is required but it must fairly

16  appear from the showing made that [the defendant's removal] claim is not without

17  foundation and is made in good faith." *Symes*, 286 U.S. at 519.

18      Defendants' removal notice sets forth the following facts, which establish

19  sufficient grounds for federal officer jurisdiction:

20      1. Any services and products supplied by AT&T or Western Electric at Fort

21         Yukon would have been provided pursuant to contract with and under the

22         direction and supervision of the Air Force. (Am. Removal Not. ¶ 25(b).)

23      2. The Air Force provided reasonably precise specifications for the work and

24         products supplied by AT&T or Western Electric at Fort Yukon. (Am. Removal

25         Not. ¶ 25(d).)

26      3. Likewise, any services AT&T or Western Electric provided to military bases in

27         France or Germany would have been provided under the direction and

28         supervision of the United States government, pursuant to contract and

reasonably precise specifications issued by the United States government. (Am. Removal Not. ¶¶ 19-20.)

4.  AT&T and Western Electric are sued for damages allegedly arising out of their work as government contractors. (Am. Removal Not. ¶ 25(c).)

5.  As government contractors, performing work on a federal enclave and at defense bases abroad, AT&T and Western Electric have colorable defenses under federal law. (Am. Removal Not. ¶ 25(d)-(f).)

These facts are sufficient to establish the "acting under" and "causal nexus" elements for federal officer removal. Because Fort Yukon is a federal enclave, all of Western Electric and AT&T's defenses to claims related to Mr. Davison's alleged asbestos exposure at Fort Yukon arise under federal law. In addition, AT&T and Western Electric have colorable federal defenses under the government contractor defense, the Defense Base Act, and the Defense Production Act. These facts thus state sufficient grounds for "federal officer" jurisdiction. *Mesa*, 489 U.S. at 124-26, 134-35.

### 1. *Defendants have colorable federal government contractor defenses.*

The government contractor defense shields military contractors from state tort law liability where three elements are met:

1.  the United States approved reasonably precise specifications;
2.  the equipment conformed to those specifications;
3.  the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988).

As stated above, Defendants' removal notice asserts that AT&T and Western Electric provided services and product at Fort Yukon and the military bases in France and Germany subject to reasonably precise specifications issued by the United States government. (Am. Removal Not. ¶ 25.) Defendants' removal notice also asserts that, by the time Mr. Davidson alleges work at these military bases, the federal government, including the United States Air Force, was aware of the known hazards of asbestos.

(Am. Removal Not. ¶ 19.) Thus, as contractors working under the supervision and control of the federal government, and subject to reasonably precise government specifications, AT&T and Western Electric have stated colorable federal defenses under the "government contractor defense." *Boyle*, 487 U.S. at 512.

**2.  *Defendants have colorable federal defenses under the Defense Base Act.***

AT&T and Western Electric also have colorable federal defenses under the Defense Base Act, 42 U.S.C. § 1651. The Defense Base Act applies to persons who suffer personal injury or death arising from any employment by a contractor or subcontractor:

1.  at any military, air, or naval base acquired after January 1, 1940, by the United States from any foreign government;

2.  upon any lands occupied or used by the United States for military or naval purposes in any Territory or possession outside the continental United States; or

3.  upon any public work in any Territory or possession outside the continental United States

42 U.S.C. § 1651(a). As used in the DBA, "public work" means:

> any project . . . involving construction, alteration, removal or repair for the public use of the United States or its allies, including but not limited to projects or operations under service contracts and projects in connection with the national defense or with war activities, dredging, harbor improvements, dams, roadways, and housing, as well as preparatory and ancillary work in connection therewith at the site or on the project.

42 U.S.C. § 1651(b).  Irrespective of the place of injury or death, the DBA provides that the exclusive remedy for such injury arises under the Longshore and Harbor Workers' Compensation Act. 42 U.S.C. § 1651(a) & (c).

Mr. Davidson alleges that he was exposed to asbestos while working for AT&T installing telecommunications equipment at United States military bases in Paris, France, and Stuttgart, Germany. (Am. Removal Not. ¶ 13.) This work was performed under the control and supervision of United States Government employees pursuant to contracts

1  between Western Electric and the United States Government, for which AT&T served as

2  a subcontractor. (Am. Removal Not. ¶ 25(e).) Because the Defense Base Act's exclusivity

3  provision applies to this work, Western Electric and AT&T have a colorable federal

4  defenses to Plaintiffs' claims sufficient to support federal officer jurisdiction under 28

5  U.S.C. § 1442(a)(1).

6      ***3. Defendants have colorable federal defenses under the Defense Production Act***

7      Likewise, AT&T and Western Electric also have colorable federal defenses under

8  Section 707 of the Defense Production Act ("DPA"), 50 U.S.C. § 2057, et seq.  Section 707

9  provides that "[n]o person shall be held liable for damages or penalties for any act or

10 failure to act resulting directly or indirectly from compliance with a rule, regulation, or

11 order issued pursuant to this Act…"  The immunity provided by the DPA for federal

12 contractors raises colorable defenses for purposes of federal officer removal under 28

13 U.S.C.A. § 1442(a)(1) *Arness v. Boeing North American, Inc.*, 997 F. Supp. 1268 (C.D. Cal.

14 1998).

15     For the work Mr. Davidson allegedly performed on United States military bases

16 in Paris and Stuttgart, Western Electric and AT&T would have been performing duties

17 in compliance with protocol dictated by the United States Government. (Am. Removal

18 Not. ¶ 19-20.) The provision of services by these companies, including connecting

19 telecommunications equipment, was administered under the supervision of the United

20 States military, in accordance with United States military policies, procedures and

21 requirements. (Am. Removal Not. ¶ 19-20.) Thus, the immunity provisions of the

22 Defense Protection Act provide colorable federal defenses to AT&T and Western Electric

23 that are sufficient to support federal officer jurisdiction.

24 II.   **IF THE COURT DETERMINES THAT PLAINTIFFS HAVE RAISED A FACTUAL CHALLENGE**
       **TO FEDERAL ENCLAVE JURISDICTION, THERE IS SUFFICIENT EVIDENCE TO SUPPORT**
25     **REMOVAL.**

26

27     Although Plaintiffs have not challenged Defendants' removal notice with

28 evidence, Defendants expect Plaintiffs' will argue that they have raised a factual

ALCATEL-LUCENT USA INC., AT&T CORP. AND PACIFIC BELL TELEPHONE COMPANY'S JOINT
RESPONSE TO PLAINTIFFS' MOTION FOR REMAND

1  challenge to Defendants' assertion of federal enclave jurisdiction by submitting a copy of

2  the Alaska Statehood Act with their remand motion.[2] To the extent that the Court

3  determines Plaintiffs have raised a factual challenge to federal enclave jurisdiction,

4  Plaintiff are incorrect in their assertion that there is no evidence supporting defendants'

5  removal based on federal enclave jurisdiction. In fact, the evidence is plain on the face of

6  Defendants' Notice of Removal.

> **A. The historical record establishes that, when Alaska became a State, the United States retained jurisdiction over Fort Yukon.**

9  A district court may take notice of facts not subject to reasonable dispute that are

10  "capable of accurate and ready determination by resort to sources whose accuracy

11  cannot reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Bernal–Obeso*, 989

12  F.2d 331, 333 (9th Cir.1993). "[A] court may take judicial notice of 'matters of public

13  record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir.2001) (quoting *Mack v. S. Bay*

14  *Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986)).

15  The history of Alaska is a matter of general knowledge that is not open to

16  legitimate dispute. Therefore, this Court may take judicial notice of the fact that: (1) prior

17  to becoming a state, Alaska was a territory under the jurisdiction of the United States of

18  America; (2) when Alaska was admitted to the Union, the United States Government

19  retained ownership of most of the land in Alaska; and (3) when Alaska was admitted to

20  the Union, the United States Government retained exclusive jurisdiction over all Alaskan

21  military installations, including Fort Yukon. Fed. R. Evid. 201(b); *Cowlitz Tribe of Indians*

22  *v. City of Tacoma*, 253 F.2d 625, 626 (9th Cir. 1957) ("As a matter of history," District

23  Court may take judicial notice of the United States' occupation of territory as sovereign

24  and possessor.).

25  But, because Plaintiffs seem to argue that the Court should ignore this basic

26  history, Defendants submit that the following facts are beyond dispute:

27  [2] This is the only conceivable factual challenge Plaintiffs could contend they are making.

28  They have presented no extrinsic materials challenging the grounds for federal officer jurisdiction.

ALCATEL-LUCENT USA INC., AT&T CORP. AND PACIFIC BELL TELEPHONE COMPANY'S JOINT
RESPONSE TO PLAINTIFFS' MOTION FOR REMAND

1        • The United States purchased Alaska from Russia though the March 30, 1867,

2           "Treaty of Cession." 15 Stat. 539.

3        • The United States took possession of Alaska on October 18, 1867. In doing so,

4           Congress obtained exclusive jurisdiction over the Alaska Territory. U.S.

5           Const., art. IV, § 3, cl. 2.

6        • When Alaska became a state in 1959, the United States retained title to all

7           federal land not transferred to Alaska. Alaska Statehood Act, Pub. L. No. 85-

8           508, § 5, 72 Stat. 347.

9        • When Alaska became a state in 1959, Congress transferred only about 28% of

10          the land to the State of Alaska. The federal government retained ownership

11          and control over the remaining 72%.[3]

12       Furthermore, Plaintiffs concede that, when Alaska obtained statehood in 1959, the

13   United States retained exclusive jurisdiction over military installations in Alaska:

14              Notwithstanding the admission of the State of Alaska into the
                Union, *authority is reserved in the United States, subjected to the*
15              *proviso hereinafter set forth, for the exercise by the Congress of the*
                *United States of the power of exclusive legislation, as provided by*
16              *article 1, section 8, clause 17, of the Constitution of the United*
                *States, in all cases whatsoever over such tracts or parcels of land as,*
17              *immediately prior to the admission of said State, are owned by the*
                *United States and held for military, naval, Air Force, or Coast*
18              *Guard purposes,* including naval petroleum reserve numbered
                4, whether such lands were acquired by secession and
19              transfer to the United States by Russia and set aside by act of
                Congress or by Executive order or proclamation of the
20              President or the Governor of Alaska for the use of the United
                States, or were acquired by the United States by purchase,
21              condemnation, donation, exchange, or otherwise…

22   Alaska Statehood Act, Pub. L. No. 85-508, §11(b), 72 Stat. 347) (emphasis added) (quoted

23   in Remand Mot., Mem. Points & Authorities 7-18).

---

24   [3] The State of Alaska comprises 385,481,600 acres. Congressional Research Service,
     FEDERAL LAND OWNERSHIP: OVERVIEW AND DATA 4, Table 1 (Washington D.C. 2014). The
25   Alaska Statehood Act transferred to Alaska: 102,550,000 acres for general use; 400,000
     acres for national forest community use; and 400,000 acres for community use; and some
26   other small parcels, not including Fort Yukon Air Force Station. Alaska Statehood Act,
     Pub. L. No. 85-508, § 6, 72 Stat. 347. The federal government retained title to the
27   remaining portion. *Id.,* § 5. Even today, the federal government owns more than 60% of
     Alaska. Congressional Research Service, FEDERAL LAND OWNERSHIP: OVERVIEW AND
28   DATA 4, Table 1 (Washington D.C. 2014).

ALCATEL-LUCENT USA INC., AT&T CORP. AND PACIFIC BELL TELEPHONE COMPANY'S JOINT
RESPONSE TO PLAINTIFFS' MOTION FOR REMAND

1    Construction on Fort Yukon Air Force Station began in June 1955, while Alaska

2    was still a federal territory, and was completed in February 1958, nearly a year before

3    Alaska became a state.  Center for Environmental Management of Military Lands (ed.),

4    *History of the Aircraft Control and Warning System in Alaska: Aid Defense of Arctic Skies*, p.

5    68 (Fort Collins, Colo. 2013).[4] Thus, Fort Yukon was an Alaskan military base prior to

6    Alaska becoming a state under the Alaska Statehood Act. And, because Fort Yukon is

7    one of the military bases over which the United States retained exclusive jurisdiction

8    when it admitted Alaska into the Union, Fort Yukon is a federal enclave. U.S. Const., art.

9    IV, § 3, cl. 2.; *Kleppe*, 426 U.S. at 539; *Coyle*, 221 U.S. at 568.

10    **B. Fort Yukon Meets the Criteria for Jurisdiction by Cession**

11    Moreover, even if Congress's retention of jurisdiction in the Alaska Statehood Act

12    were ineffective, public record establishes that Fort Yukon would be a federal enclave by

13    cession.

14    Section 8 of the Alaska Statehood Act required the Alaska constitutional

15    convention to agree that:

16    > All provisions of the [Alaska Statehood Act] . . . reserving
17    > rights or powers to the United States, as well as those
>    > prescribing the terms or conditions of the grants of lands or
18    > other property therein made to the State of Alaska, *are
>    > consented to fully by said State and its people.*

19    Alaska Statehood Act, Pub. L. No. 85-508, § 8(b)(3), 72 Stat. 347 (emphasis added).

20    Alaska's ratifying convention gave the requisite consent in Sections 12 and 13 of

21    Alaska's constitution:

22    > **Section 12. Disclaimer and Agreement**

23    > *The State of Alaska and its people forever disclaim all right and title
24    > in or to any property belonging to the United States or subject to
>    > its disposition, and not granted or confirmed to the State or its
25    > political subdivisions, by or under the act admitting Alaska to the
>    > Union.* The State and its people further disclaim all right or
>    > title in or to any property, including fishing rights, the right
26    > or title to which may be held by or for any Indian, Eskimo, or

27    ---
[4] Available at
28    http://dnr.alaska.gov/Assets/uploads/DNRPublic/parks/oha/publications/histairc
ontrol.pdf.

ALCATEL-LUCENT USA INC., AT&T CORP. AND PACIFIC BELL TELEPHONE COMPANY'S JOINT
RESPONSE TO PLAINTIFFS' MOTION FOR REMAND

1
2
3
4
5

Aleut, or community thereof, as that right or title is defined in the act of admission. *The State and its people agree that, unless otherwise provided by Congress, the property, as described in this section, shall remain subject to the absolute disposition of the United States.* They further agree that no taxes will be imposed upon any such property, until otherwise provided by the Congress. This tax exemption shall not apply to property held by individuals in fee without restrictions on alienation.

6

**Section 13. Consent to Act of Admission**

7
8
9

*All provisions of the act admitting Alaska to the Union which reserve rights or powers to the United States*, as well as those prescribing the terms or conditions of the grants of lands or other property, *are consented to fully by the State and its people.*

10 Alaska Const., art. XII, §§ 12 & 13 (emphasis added).

11 Contrary to Plaintiffs' argument, the notice requirements of 40 U.S.C. § 3112 (b)

12 do not apply to circumstances where the Government retains jurisdiction over land

13 when a state is admitted to the Union.[5] But even if those requirements applied,

14 Congress's express retention of ownership and exclusive jurisdiction over all military

15 installations in Alaska, including Fort Yukon, through Section 11(b) of the Alaska

16 Statehood Act, combined with Congress's demand in Section 8(b)(3) that Alaska agree to

17 such exclusive jurisdiction, are notice from the Federal Government to the people of

18 Alaska that the Federal Government accepted exclusive jurisdiction over the retained

19
20

[5] Section 3112 provides:

21
22
23
24
25
26

**(b) Acquisition and acceptance of jurisdiction.**--When the head of a department, agency, or independent establishment of the Government, or other authorized officer of the department, agency, or independent establishment, considers it desirable, that individual may accept or secure, from the State in which land or an interest in land that is under the immediate jurisdiction, custody, or control of the individual is situated, consent to, or cession of, *any jurisdiction over the land or interest not previously obtained*. The individual shall indicate acceptance of jurisdiction on behalf of the Government by filing a notice of acceptance with the Governor of the State or in another manner prescribed by the laws of the State where the land is situated.

27
28

40 U.S.C. § 3112 (b) (emphasis added). Thus, by its own terms, Section 3112 does not apply to situations where the Government retains jurisdiction over certain land while admitting a State into the Union.

ALCATEL-LUCENT USA INC., AT&T CORP. AND PACIFIC BELL TELEPHONE COMPANY'S JOINT
RESPONSE TO PLAINTIFFS' MOTION FOR REMAND

1  lands, including Fort Yukon. And Sections 12 and 13 of Alaska's Constitution evidence

2  Alaska's express consent to the Federal Government's exercise of exclusive jurisdiction

3  over the retained lands. Thus, the Federal Government's retention of jurisdiction over

4  Fort Yukon satisfies the elements of exclusive jurisdiction by cession.

5  **III.   <u>THERE IS NO BASIS FOR SANCTIONS.</u>**

6         Plaintiffs argue that, if the Court remands this case, they should be awarded fees

7  and costs as a sanction pursuant to 28 U.S.C. 1447(c). There is no basis for such a

8  sanction.

9         "Absent unusual circumstances, courts may award attorney's fees under § 1447(c)

10  only where the removing party lacked any objectively reasonable basis for seeking

11  removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141, 126 S.Ct. 704, 163 L.Ed.2d

12  547 (2005). Here, Defendants removed the case based on Mr. Davidson's own testimony

13  that he worked for AT&T on government-led projects at United States military bases in

14  Alaska and overseas. For the reasons set forth above, that testimony provided grounds

15  for removal based on "federal enclave" and "federal officer" jurisdiction. Defendants

16  removed the case to this Court within seven days of Mr. Davidson's testimony.

17  Defendants did not remove the case in bad faith or for purposes of delay. Thus, even if

18  the Court were to remand the case, there would be no basis for sanctions. *Id.*

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

Case No. 3:16-cv-05766-VC

ALCATEL-LUCENT USA INC., AT&T CORP. AND PACIFIC BELL TELEPHONE COMPANY'S JOINT
RESPONSE TO PLAINTIFFS' MOTION FOR REMAND

1

<u>**CONCLUSION**</u>

2
Plaintiffs' facial challenge to Defendants' removal notice is not well-taken. Taking

3
the facts alleged in the amended removal notice as true, it is clear that the Court has both

4
"federal enclave" and "federal officer" jurisdiction over Plaintiffs' claims.

5
**WHEREFORE**, Defendants respectfully request that the Court deny Plaintiffs'

6
remand motion and retain jurisdiction over this matter. Defendants also request any

7
additional relief that this Court deems just and proper.

8
Dated:  October 27, 2016                          RILEY SAFER HOLMES & CANCILA LLP

9

10
By:  /s/ *Meghan R. McMeel*

11
Meghan R. McMeel
Alison Maddeford

12
Attorneys for Defendants
ALCATEL-LUCENT USA INC., AT&T CORP.

13
AND PACIFIC BELL TELEPHONE
COMPANY.

14

15
4816-7542-3291, v. 1

16

17

18

19

20

21

22

23

24

25

26

27

28

ALCATEL-LUCENT USA INC., AT&T CORP. AND PACIFIC BELL TELEPHONE COMPANY'S JOINT
RESPONSE TO PLAINTIFFS' MOTION FOR REMAND